STATE OF WEST VIRGINIA

*v.*

PENN OAK OIL & GAS, INC.

(No. 9690)

Submitted September 25, 1945. Decided November 20, 1945.

*Robert B. McDougle* and *Wm. Bruce Hoff,* for plaintiff in error.

*Ira J. Partlow,* Attorney General, *Ralph M. Hiner,* Assistant Attorney General, and *Eston B. Stephenson,* Special Assistant Attorney General, for defendant in error.

Fox, Judge:

Penn Oak Oil & Gas, Inc., complains of a judgment against it in the sum of $2,494.57, with interest thereon from May 30, 1940, entered in the Circuit Court of Wood County, West Virginia, on March 30, 1944, in a proceeding, by notice of motion, in which the State of West Virginia was plaintiff, and Penn Oak Oil & Gas, Inc., was defendant, growing out of the alleged nonpayment by said defendant of excise taxes imposed on it as a

distributor of gasoline under the provisions of Chapter 125, Acts of the Legislature, 1939.

There are no disputed facts in the case. On the 1st day of July, 1939, Penn Oak Oil & Gas, Inc., a distributor of gasoline, hereinafter referred to as "defendant" had on hand for sale, use and distribution 64,131 gallons of gasoline, and during the month of July purchased an additional 8,012 gallons, making a total of 72,143 gallons. It was given credit for 705 gallons on account of leakage and evaporation, leaving a balance of 71,438 gallons, the tax on which at the rate of five cents per gallon amounted to $3,571.90. It is claimed by the State that this amount should have been paid by the defendant in the manner and at the time required by Code, 11-14-4. Only a part of the tax which the State contends accrued during the month of July was paid, and a penalty of $327.17 was added, making a total of $3,899.07, of which amount credits aggregating $1,434.30 were paid from time to time, leaving as a balance of July taxes and penalties, as the State contends, the sum of $2,464.77. To this was added the sum of $29.80, the net balance due on taxes and penalties, growing out of business done by the defendant in August and September, 1939, thus accounting for the amount sued for. These figures are gathered from the notice of motion, the account filed therewith, and the pleadings filed by the defendant herein.

Defendant filed its demurrer to the notice of motion, contending that inasmuch as a notice of motion can only be employed to recover money due on contract, it was improper to pursue this remedy to collect the tax and penalties claimed. Generally speaking, we think this contention would be well taken as between private litigants, but Code, 14-1-2, referring to the collection of claims due the State, provides: "When the proceeding is at law, it may be by motion on twenty days' notice, or by action; * * *." The trial court, we think, properly overruled this demurrer.

The defendant filed various pleas, amended pleas and notices of sets-off, to which plaintiff replied generally, and, in some instances, specially, and to certain of which pleas the State filed a plea of *res adjudicata*. Whether consideration of these pleas is necessary will depend upon the conclusion reached on the principal question in the case, which is whether Chapter 125, Acts of the Legislature, 1939, requires payment for the month of July of that year of taxes on gasoline received by the defendant during that month, as well as that on hand on the first day of said month.

As is well known, the policy of imposing an excise tax on the sale of gasoline was established in advance of the enactment of our Code of 1931. That Code, by Section 3 of Article 14 of Chapter 11, imposed such a tax and made various provisions with respect of the collection thereof. That section was amended by Chapter 109, Acts of 1937. It was further amended by Chapter 125, Acts of 1939. The pertinent part of Section 3 of the Act of 1937, reads as follows:

"There is hereby imposed upon every person who is a distributor, retail dealer or importer under the terms of this article, an excise tax based on the quantities of all gasoline sold, purchased or used in this state on and after the first day of April, one thousand nine hundred thirty-seven (except as herein provided), which tax shall until July one, one thousand nine hundred thirty-nine, be equivalent to five cents per gallon thereof and shall be paid as hereinafter provided. On and after the first day of July, one thousand nine hundred thirty-nine, the tax herein provided shall be equivalent to four cents per gallon.

"A distributor shall use as the measure of the tax the gallonage sold, for whatever use, in this state (as provided in section four of this article), and the gallonage used by him in motor vehicles operated in this state. A retail dealer shall use as the measure of the tax the gallonage purchased or obtained by him. An importer shall use as the measure of the tax the gal-

lonage purchased by him for use in motor vehicles to be operated in this state.

"The special excise tax imposed by this article shall be paid by the person first selling, or using in this state, the gallonage of gasoline which under this article shall form the measure of such tax; but in no case shall any such gallonage be used more than once in determining taxes due hereunder. The taxes imposed by this article are in addition to all other taxes now imposed or prescribed by law.

"The excise tax imposed by this article shall accrue from the date of sale or purchase of the gasoline, whichever accords with the method of reporting required by this article, or conforms with the election of the taxpayer in the case of distributors; * * *."

Section 3 aforesaid as amended by the Act of 1939 reads as follows:

"There is hereby imposed upon every person who is a distributor, retail dealer or importer under the terms of this article, an excise tax based on the quantities of all gasoline produced, purchased, sold or used in this state, which tax shall, until July first, one thousand nine hundred forty-one, be equivalent to five cents per gallon thereof, and shall be paid as hereinafter provided. On and after July first, one thousand nine hundred forty-one, the tax herein provided shall be equivalent to four cents per gallon.

"A distributor, importer, or retail dealer shall use as the measure of the tax the gallonage produced, purchased, sold or used in this state (as provided in section four of this article.) Gallonage shall be included in the measure of the tax by refiners and producers when such gallonage has been placed in any tank from which withdrawals are made for sales or transfer to any other person.

"The excise tax imposed by this article shall be paid by the person first producing, or receiving in this state, the gallonage of gasoline which under this article shall form the measure

of such tax; but in no case shall any such gal-
lonage be used more than once in determining
taxes due hereunder. The taxes imposed by this
article are in addition to all other taxes now
imposed by law.

"The excise tax imposed by this article shall
accrue from the date of production, purchase,
sale or use of the gasoline. * * * "

It is perfectly clear that under the Act of 1937, a dis-
tributor of gasoline was not required to pay a tax there-
on until the gasoline was sold or used. It is true that by
Code, 11-14-7, in effect prior to the Act of 1939, afore-
said, it was provided: "Any distributor may elect to pay
his tax upon the basis of the quantity purchased or re-
ceived during the month instead of the quantity sold and
used. Any distributor required to use or adopting this
method of reporting shall not be allowed to deduct any
gallonage on account of losses arising from leakage or
evaporation, or other causes." In Chapter 124, Acts of
1939, this provision was omitted from the amendment
to Article 14 of Chapter 11, and a new Section 7 was
substituted. The section as it appears in Code, 11-14-7,
probably accounts for the language used in the Act of
1937, which provided that, "The excise tax imposed by
this article shall accrue from the date of sale or purchase
of the gasoline, *whichever accords with the method of
reporting required by this article, or conforms with the
election of the taxpayer in the case of distributors.*" The
language underscored (by us) was omitted in the Act
of 1939. It is clear, therefore, that by the enactment of
Chapters 124 and 125, Acts of 1939, the election afore-
said, which a distributor might theretofore have exer-
cised was denied him, and we therefore come to the
crucial question in this case as to the measure of the tax
adopted by the amendment to Section 3, as enacted by
Chapter 125 of the Acts of 1939.

A close examination of the Acts of 1937 and 1939 will
disclose the differences between them. The Act of 1937,
Section 3, provided specifically that, "A distributor shall
use as a measure of the tax the gallonage sold, for what-

ever use, in this state * * * and the gallonage used by him in motor vehicles operated in this state." It further provided that, "The special tax imposed by this article shall be paid by the person first selling, or using in this state, the gallonage of gasoline which under this article shall form the measure of such tax"; and still further, "The excise tax imposed by this article shall accrue from the date of sale or purchase of the gasoline, whichever accords with the method of reporting required by this article, or conforms with the election of the taxpayer in the case of distributors; * * *." There is nothing in the Act of 1937 which requires payment of the tax unless the gasoline is sold or used; but under said Act, as indicated above, a distributor might have elected to pay his tax on the basis of gasoline purchased, though not required so to do. When we come to the Act of 1939, Chapter 125, Section 3, we find first that an excise tax is imposed "based on the quantities of all gasoline produced, purchased, sold or used in this state, * * *"; the word "produced" having been added to the language used in the corresponding phrase of Section 3, Chapter 109, Acts of 1937. It then provides: "A distributor, importer, or retail dealer shall use as the measure of the tax the gallonage produced, purchased, sold or used in this state* * *". Then follows this provision: "The excise tax imposed by this article shall be paid by the person first producing, or receiving in this state, the gallonage of gasoline which under this article shall form the measure of such tax; * * *." Then follows the provision that, "The excise tax imposed by this article shall accrue from the date of production, purchase, sale or use of the gasoline", and the language appearing in the 1937 Act "whichever accords with the method of reporting required by this article, or conforms with the election of the taxpayer in the case of distributors;" was eliminated. We think these changes were intended to, and do, remove every vestige of the right a distributor possessed theretofore to pay the tax only when gasoline was sold or used, and that the new policy of requiring

payment of such tax on gasoline produced, purchased or received was substituted.

Another significant enactment, which we think has a bearing on this controversy, is that relating to refunds. There has always been a provision for refunds to cover loss of gasoline by reason of leakage or evaporation. Code, 11-14-19. Chapter 124, Acts 1939, reenacts Section 19, as it appears in the Code, and then adds the following: "Every distributor shall be entitled to a refund from the state of West Virginia of the amount of gasoline tax paid by him, on any gasoline lost or destroyed, while he shall be the owner thereof, through fire, lightning, breakage or flood: *Provided, however*, That such distributor shall notify the tax commissioner in writing of such loss or destruction, and the amount of gasoline lost or destroyed, within ten days from the date of the discovery of such loss or destruction: *Provided further*, That within thirty days after the discovery of such loss or destruction such distributor shall file with the tax commissioner an affidavit sworn to by him, setting forth in full the circumstances and amount of the loss or destruction, and such other information with respect thereto as the tax commissioner may require."

We think it clear that the Legislature intended, by the enactment of Chapter 125, Acts of 1939, to require distributors to pay the tax based on the amount of gasoline produced, purchased or received in the State during the current month, and to depart from the former policy requiring such payment only on gasoline sold or used by him during such month. For example, one provision of that Act is that the tax imposed shall be paid by the person first producing or receiving gasoline in this State, whereas the 1937 Act requires that the tax imposed shall be paid by the person first selling or using it in this State. The difference is the use of the words "selling or using" in the earlier act, and "producing or receiving" in the latter one. The word "purchased" is used in both the 1937 and 1939 statutes. The word "receiving" is not used in the 1937 statute, presumably for the reason that

under that act it was not of particular concern to the State how much gasoline a distributor received, if he elected to pay only on gasoline sold and used. There is no provision with respect to gasoline on hand at the date the 1939 Act became effective, but we think it reasonable to hold that gasoline then on hand would be considered as having been produced and received as of that date and therefore subject to tax. We think there was a clean break with the past, and a new system put into effect. We cannot believe that it was ever contemplated that one system should govern as to gasoline on hand, and another as to gasoline produced or received after the effective date of the Act of 1939.

After the passage of Chapters 124 and 125 of the Acts of 1939, there was no election such as had theretofore existed on the part of a distributor, to pursue one of two methods in determining the basis and amount of his tax. Applied to this case we think the statute of 1939, properly construed, required the defendant to report and pay the tax on all gasoline on hand on the 1st day of July, 1939, as well as that received by it during that month, in the manner provided by Code, 11-14-4; but that when once paid, the provisions of Chapter 124, Acts of 1939, with respect to refunds, became available to the defendant, provided he should comply with the terms thereof.

Being of this opinion, we think consideration should be given to the claim of defendant that it has a right, in this action, to set-off against the demand of the State the tax accruing on some 44,588 gallons of gasoline lost by it through breakage, on or about October 19, 1939. The facts in respect to this loss are these: Admittedly the defendant had on hand on July 1, 1939, 64,131 gallons of gasoline. It added to that gallonage during the months of July and August, made sales therefrom, and suffered some losses through leakage. According to its pleas hereinafter referred to, it had on hand on September 1, 1939, gasoline to the amount of 64,638 gallons, to which it added in September 16,001 gallons, making a total of 80,639 gallons. Gasoline sold and losses suf-

fered through shrinkage during the months of September. and October amounted to 28,073 gallons, leaving 52,566 gallons. There were 7,978 gallons on hand after the breakage on October 19, 1939, and a loss of 44,588 gallons. In this situation, there being no claim that the tax on the gallonage lost has been paid, defendant sought to obtain credit, as against the claim of the State, for the tax on this lost gallonage, on the theory that while no tax had been paid, it would be unjust for the State to impose a tax thereon; and it was contended that, while the technical procedure required to obtain a refund may not have been complied with, the same result could and should be accomplished by offsetting, as against the claim of the State, the tax and penalties which had accrued on the lost gallonage. This theory was presented by three separate pleas: One a special plea; another a plea of accord and satisfaction, based upon an alleged agreement between an employee of the state tax department and the defendant, that a credit in the way of a refund would be allowed; and the third a notice of set-off. All three pleas attempt to reach the same result. The special plea was amended more than once and the notice of set-off was also amended. The State filed and the trial court sustained a plea *res adjudicata* as against the plea of set-off and the special plea. This ruling, we think, was improper; but it is of no importance for the reason that the demurrers of the State to the several pleas and to the notice of set-off filed by the defendant, were sustained, and the court held, in effect, that the defendant was not entitled to maintain any defense to the State's action by reason of the matters set up therein. We do not undertake to pass upon the methods by which these pleas were presented, or the defenses of the State interposed thereto, except to say that we do not think the plea of *res adjudicata* can be applied to previous rulings of a court in the suit or action in which such plea is filed. As we understand that plea, it can only be interposed in cases where in a suit or action a matter once determined is again presented in a second suit or action between the same parties, and a new ruling on

the question determined in the first is sought in the second. In such case the plea of *res adjudicata* is often employed and sustained.

On the question of the merits of the pleas and the notice of set-off filed by the defendant, we think the court committed no error in refusing to consider any one of them as a valid defense to the State's action. In the first place, the statute makes specific provision as to how a refund of a tax on gasoline may be obtained. Where a statute imposing a tax provides the taxpayer with a specific remedy against injustices arising thereunder, and the taxpayer fails to avail himself of the remedy so provided, he cannot go outside the statute for other and different remedies. Here the tax was not paid, and a refund could only be made where a payment has preceded a demand therefor. The word "refund" in the sense it is used in the statute means a return of money previously paid. Failure of the defendant to pay the tax, which, in our opinion, was legally chargeable against it, creates an insuperable barrier to any refund. Whatever character of plea is used to obtain a refund, it must fail for the very good reason that there was, nothing to refund; nothing has been paid from which a refund could be made.

All of the parties to this action seem to treat the case as one seeking to recover a tax for the gasoline on hand on July 1, 1939. Defendant received other gasoline subsequent to that date, and sold and used gasoline during the months of July, August, September and October. It seems to be agreed that all taxes on gasoline actually sold or used have been paid. Failure to pay the tax on the 44,588 gallons of gasoline lost, is the real basis of this litigation, and when the amount of such tax is calculated, it will be ascertained that the tax unpaid on this lost gallonage, with penalties, closely approximates the amount sued for. We are of the opinion that there was an obligation on the part of the defendant to include this gallonage in his report for the month of July, 1939, but not having paid the taxes thereon, it is not entitled to

the benefit of a refund as a defense to this action. The loss of the gasoline some months later makes a case of hardship but it is one for which the law affords no relief in this action.

The record discloses that some negotiations were had between an employee of the tax department and defendant, touching the payment of the July tax, and perhaps other related matters. This is set up in the plea of accord and satisfaction mentioned above. We do not think the State's right to its taxes could be waived in that way, even admitting as true the allegations of the plea. On the whole we are of the opinion that the trial court committed no error in entering judgment against defendant for the amount sued for, and the same is affirmed.

*Affirmed.*